The substantive questions presented by this appeal are relatively straightforward. Can sophisticated contracting parties agree to liquidate their risk from uncertain future events through a specified cancellation fee provision? Second, do commercial arbitrators exceed their powers by substituting an award of actual damages for the agreed-upon cancellation fee? Do we know they did that? There's no question they did it. Why they did it is the subject of the district court's confirmation order. Why didn't anybody ask for an explanation of what happened? You got a one-page arbitration award. Maybe I'm wrong. You had the authority to ask these people to explain why they did what they did, and nobody seemed to ask for an explanation, leaving us somewhat in the dark. There was one round of requests for clarification that the district court judge, Judge Mahan, sua sponte asked for, and that was whether the award included any interest attorneys' fees and costs. Right. That – even that request was strongly opposed by Exxon. Yeah, well, I don't – that is irrelevant. I mean, didn't – did anybody have the ability before all of this thing turned into a Federal case to ask for an explanatory couple of pages as to what they did and why? We certainly believed we did. Why – nobody asked for that. After the district court hearing and the district court ruling, the district court judge issued his decision. Now, we could, I suppose, have gone in for a – with a motion asking for further clarification and for an explanation of reasons. There are, however – and this is the – But I think the problem – the problem with that is, under the rules of the American Arbitration Association, you need to let your arbitrators know the rules that you want them to follow. So you tell them when they're appointed, you go ahead and you do it under the rules, and we want an explanation of your decision. They know going in, and you get it. That's right, and this was done under AAA arbitration rules, and we could have asked in advance, you're right, for a reasoned award from the arbitrators. And you didn't, so you get a pig and a poke. You get an award. Now you're asking us to sort out something that you should have sorted out before we even got this thing, so we at least know what we're coping with. So we're left to all kinds of vague interpretations. Well, could have, would have, should have, might haves. I don't – let me quarrel a bit with what we're asking to do. We're asking for this Court to review the district court's confirmation order. Now, the district court on one issue found it necessary to get clarification, then issued the district court's ruling. Obviously, we ask parties. Now, Exxon quarrels with this. They say that there is no obligation for arbitrators, and a matter of fact, it's discouraged for arbitrators giving reasons for their awards. So Exxon takes the position that we couldn't ask. They took it before. I expect them to take it again. But at this point, the issue before this Court is a review of the confirmation order. It's true. Hindsight is always 20-20. We could have gone back and asked at the beginning of the arbitration for a reasoned decision. Now you're telling us that something was done that shouldn't have been done, right? I'm telling you that the award is subject to being vacated because of things that the arbitrator did. Not the reasons why they did them, but things the arbitrator actually did. Your basic position is that any arbitral award that is not $2,849,753 is unlawful or improper on the part of the arbitrator. Basic position. Is that correct? Right. Based upon the arbitrator's finding of actual damages, yes. Yes. Okay. Now, what Exxon attempts to do on this appeal in this Court is launch a preemptive strike. It says basically this appeal should not be here because courts at either the district or the appellate court level cannot review the merits of arbitration awards. Now, over 20 years ago, this Court addressed that, what I've referred to as a dangerous half-truth, and said there are limitations on that proposition. And one of them is where the arbitrators substitute their interpretation or their award for the remedies that the parties have agreed upon in the contract as a result of disregarding the contractual language. That is what we've submitted has been done here. It supported that review power is supported by not only case law from this Court, but also case law from the Nevada Supreme Court. What has happened, however, is that there has developed in both of those courts a twin body of case law. One set of cases saying that courts cannot do or are limited in doing what the second body of case law from the very same courts have, in fact, done. And that is why we attempt to make it clear in our briefs you have to look at what the Court has actually done as well as what it has said. And in particular, there are, I suggest, two, at least two major reasons why this dichotomy that Exxon attempts to exploit on this appeal has developed. One of them has to do with the fact that some of the cases in both Federal and State courts use an arbitrable standard of review of arbitral awards in commercial arbitration cases that has been developed in labor arbitration cases. The problem is, labor arbitration cases, there is a far wider scope of authority for the arbitrators than just simply the contract and the submission of the parties. So that when the labor arbitrator says or issues an award and the Court says it is a plausible interpretation of the contract, that's enough because it doesn't have to be directly supported by the contract. It may be supported by other things. The law of the shop, that's true. Let me jump to something specific. How do we know that the arbitration panel simply didn't come to the conclusion that Exxon never exercised its right to cancel, that this was simply a postponement and, therefore, because they didn't exercise their right to cancel, the provision you're talking about doesn't apply, and so then they go off and do what they were empowered to do, is figure out any of the disputes that were for them, and so they award damages? I mean, how do we know that they didn't just say, well, they really didn't cancel, they just asked to postpone? I think there are two answers to that, one of which was given by the District Court. The basic bottom line is, to reach that, the arbitrators would have had to have disregarded the specific contractual provisions. Now, why do I say that? This was a contract for a convention at a specific period of time. It had a time as of the essence provision. If you look at the contractual language, it gave both parties two choices, hold the event or cancel it. What Exxon did was to write a letter saying, well, we want to postpone it to sometime in 2002, but we want you to roll over the fees. As a matter of fact, they said, we expect you to roll over the fees. There were some negotiations that occurred after that. Various proposals were made for that quote, unquote, postponed convention, until at one point, Exxon wrote us a letter saying, we want you to roll over the fees, and if you don't do that and exercise your legal rights, we'll never do business with you again. And they did that. They held a convention in 2002. But far from being a postponement of the 2001 convention, Exxon was not involved at all. So if you are going to try to say that you can play with the language, well, postpone it on our terms, and it's not a cancellation. Then, as Judge Mahan said, well, you simply look at the cancellation provision, figure out whether we're better off if we cancel or if we postpone or if we don't perform, and make your choice accordingly. The answer to your question, Judge Trott, is look at the contractual language. It doesn't give the parties that choice, and as a result, the arbitrators disregarded the contractual language if that's, in fact, what they did. Now, the importance, I think, of understanding what this Court and the State Court, the Nevada Supreme Court, have actually done in reviewing arbitration awards is illustrated by the Court's There, it recognized that in addition to disregarding contractual language and substituting remedies, an arbitral award also can be vacated where the arbitrators disregard what is called legally dispositive facts. That becomes a manifest disregard of the law. Now, the express rationale, which is in the district court's decision, is that this is an invalid liquidated damages provision allowing the arbitrators to substitute actual damages for the cancellation provision. The problem with that is not an undisputed fact outside of what the arbitrators did, which was the circumstance of the claim ultimately rejected, you could say, but a legally dispositive fact from what the arbitrators did and said themselves. And that is that actual damages in this case were $905,000. We know from Nevada law, by express pronouncement, that actual damages that are slightly less than one-third of the cancellation fee are not, in fact, disproportionate, sufficient to characterize it as a penalty. And, in fact, it's very difficult to get to a penalty circumstance in any case here. This was a cancellation fee that was calculated by simply taking the number of room nights that Exxon wanted times the room rate. Now, Exxon's expert during the arbitration said, wait a minute, that produces an award of gross revenue, not an award of profit, as it should. It doesn't take very much thought to recognize, however, why Exxon agreed to that provision in the first place, supposing Venetian had canceled this convention. For Exxon, then, to go down to the street, to the Bellagio, Mandalay Bay, or other facilities, a cancellation fee based strictly on net profit simply wouldn't provide them with sufficient accommodations. What does the agreement require to effectuate cancellation, by either part? It requires notice of cancellation and payment of the cancellation fee. So cancellation doesn't happen until notice and payment. Here, there was, if you want to say there was notice, there wasn't payment, so maybe there wasn't cancellation. The problem with that is that the actual wording is payment will accompany payment the notice of cancellation. Accompany? I think it's accompany. Nope. This is notwithstanding any other provision. Either party may cancel upon written notice to either party at any time prior to the event and upon payment of an amount based on the following scale. So it seems if you take a strict view of that language, the only way you can cancel is by saying it's over and here's the dough. And falling short of that, you haven't canceled. It doesn't say if you cancel, then you have to pay. It says you cancel by doing two things, notifying and sending a big check. At that point, however, the situation you have postulated is that you could in fact have what was a cancellation, what occurred here. They told us we will not occupy the rights. I wouldn't draft this language. That's correct. Cancellation takes two things. Without the second one, do you have a cancellation? I think you do. You have a cancellation. In fact, what you have is a breach of the provision. I see. So this is why I'm thinking, well, maybe the arbitration panel took a look at this the way I did and said, gee, I have to do two things to cancel. This wasn't canceled. We didn't write this language. They did. It wasn't canceled. Therefore, we're going to give damages because this doesn't apply. But if it wasn't canceled, then according to Exxon's term, it was postponed to 2002, and they never honored the agreement in 2002. I don't care if it was postponed or not. I'm simply looking at the language that said you have to do two things. One wasn't done, so this provision might not apply. I mean, an arbitration panel might have concluded that. If it's sloppy enough to confuse me, maybe it confused them. If that is true, then you have the problem of a cancellation occurring in fact, and you have no – you know, you have no remedy. You have no breach. I didn't write it. Right. You didn't write it. We didn't write it. You did. The problem is we interpret contracts to effectuate relationships and legal rights and remedies. As Scalia says, by reading the language. Right. The language also has meaning in the real world, and I'm not – frankly, I'll tell you, I don't remember who I'm quoting. That's why it would be nice if the arbitration panel had excluded what it did. It would be nice. The problem is the case law and the rules that say they don't have to. Well. Any other questions? I could have asked at the outset. If possible, I'd like to reserve time for a rebuttal. Yes, you may. Thank you. May it please the Court, my name is Shannon Ratliff. I'm here with Mr. Rick Fordyce, and we represent Exxon Mobil Corporation. I'd like to go to – Could you move that mic just up a little bit? Yes. Thank you. Is that better? Yes. I'd like to go to some of the initial questions that have been asked. In answer to the question of why didn't the parties request, it's a good question at this point. As I'm sure the panel knows, under the American arbitration rules, the parties to an arbitration, prior to that arbitration, can decide to take one of three tacts. They can either say, we want detailed findings of fact and conclusions of law. Two, we want a reasoned opinion, which does not necessarily have to contain that sort of detail. Or three, we require no explanations. In this instance, it is without – it is without – it's beyond dispute that the parties said, give us an award. Now, when we think in terms of arbitration as being a creature of the contract, these parties have said, when we empower these arbitrators, the thing that controls them is the agreement. And we understand that they may either misconstrue that agreement or they may misapply the law. But we understand in order to get expeditious determination of this dispute, that's the trade we make as a matter of contract. And the circumstances under which a court can then come back in – and if you've read the record in the trial court here, the trial judge was very frustrated by saying, how do I know that arbitrators didn't just go off on some wild hair? And we had an extended conversation about this at the time of the hearing in the district court. And my answer could only be, that is because the people who drafted this agreement and who executed this agreement had said, that is the way we agree this dispute will be resolved. Now, counsel talks in terms of the irrational decision. Judge Trott has already pointed out what we believe is one point, and that is, if Venetian drafts a contract, they ought to be prepared to stand by it, and they ought to understand if an arbitrator reads it the way they drafted it. And so the record is clear, under that provision, when Exxon asked not to terminate this entire agreement, when it asked to postpone, it even offered to pay $3 million that Venetian could hold for a year. No interest to roll it in to the following year. But also, I think, the panel would be overlooking what was very clear. One, there was no disagreement about what the law was in the state of Nevada with regard to whether this clause was, in fact, a valid judgment by the parties as to actual damages, or as to the test to be applied to see whether it was a penalty and, therefore, would fall. There was no dispute that if it fell as a penalty clause, then the proper adjudication by the arbitration panel would be to award actual damages. There are rational ways that the arbitration panel could have arrived at this decision. And I think, and I do believe, Judge Trott, I do believe that once you determine, once the three of you determine there are rational ways this panel could have gotten there, to put it in the vernacular, the hunt's over. And that is the reason that we feel like we are here debating something that, quite frankly, I don't find too many legal propositions that I think are beyond debate. But I believe that once the determination is made, there's a rational way to get there, then this debate is truly over. I think that the trial judge, when he heard this matter, was, he was distraught that he didn't have the ability to test it. But I think that was because I didn't do a very good job of telling him, Your Honor, if the parties don't give you the tools to test it, then your only decision is, is this decision so irrational that no rational person could have arrived at it? And we believe, we earnestly believe that that is the situation we've got here. I'll be happy to answer any questions, but I think that, I think I've basically said everything I've got to say unless the panel has questions. Thank you. Thank you, Your Honor. You had a few minutes of rebuttal if you wish to utilize it. The only thing I want to comment on is the last statement made by counsel, and that is that the only test at the judicial level is whether the award is irrational or not. I think if you look at the case law, that is not true. I think it is one of the problems that has arisen, is the fact that while that statement is made in conjunction with manifest disregard of the law, there are an equal number of cases in which courts have in fact looked at much more as whether the award is rational and whether, to refer to your question, Judge Trott, whether there are rational ways by which the arbitrators could have arrived at this award. One, of course, is what Judge Trott, you and I discussed. That is the language of the contract. One of them is also the question of remedies. These parties did, in fact, commercially, as sophisticated parties, liquidate their risks. Indeed, what the award does is simply remove the cancellation fee provision from the contract entirely. Without it, we could arrive at a ward of actual damages. Which is what you do if you decide under the event of loss it's an unenforceable penalty. Exactly. That's why it is important to go to two things. Number one, whether this clause is in fact a penalty, given what it says. And number two, the legally dispositive fact as to whether or not it is on reasonably disproportionate under Nevada law. And I think when you look at the contract, which expressly says cancellation is not a breach, and the cancellation amount is determined by way of gross revenue because of the fact that's in the interest of both parties, and you have the legally dispositive fact under Nevada law that this is not disproportionate, you have the requirements enunciated by both this Court and the Nevada Supreme Court for vacating New York. Thank you. The matter will be submitted. I appreciate your arguments.
judges: Trott, T.G. Nelson, Paez